UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK THORNS SR., individually
and as Next Friend to PATRICK B. THORNS, JR.,
and EDWARD L. SCOTT, minors,

    Plaintiffs,

v.                                                                                            Case No. 06-10674
                                                                                       Hon. Sean F. Cox

MADISON DISTRICT PUBLIC SCHOOLS,
WILLIAM H. HARRISON, and
DAVID HURNEVICH,

    Defendants.
_____

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for summary judgment. The parties have fully briefed the issues and a hearing was held June 1, 2007. For the following reasons, the Court **GRANTS** Defendants' Motion for summary judgment.

### I. BACKGROUND

This action arises out of the suspension of Plaintiffs[1], Patrick B. Thorns, Jr. and Edward L. Scott. Plaintiffs, both minors, are students at Madison Heights High School.

On September 28, 2005, Plaintiffs Thorns, Jr. and Scott, who are brothers, were approached by friends who wanted to go fight a group of individuals at Rosie's Park. Rosie's Park is a regular after school hang out. Plaintiffs, and several of their friends who allegedly

---

[1]"Plaintiffs" refers only to Patrick Thorns, Jr., and Edward Scott

1

approached them to go fight the kids at Rosie's Park are football players. The group, including Plaintiffs, headed to Rosie's Park. At the park, they encountered several students, including Joe Chowning ("Chowning") and Aaron Brown ("Brown").

Plaintiffs claim that about a week earlier, Chowning confronted Plaintiff Thorns, Jr. at another local park. Chowning allegedly used racial slurs towards Thorns, Jr. and a fist fight ensued. The fight was broken up by another student's father. According to Plaintiffs, Chowning threatened Thorns, Jr. throughout the week seeking a rematch. Additionally, on the same day as the incident, students Diallo Demps and Delano Glass, who are black, were allegedly subjected to racial slurs hurled by a white student, Kyle Davis. These incidents allegedly precipitated the encounter at Rosie's Park.

When Plaintiffs encountered Chowning at Rosie's Park, Chowning approached Thorns, Jr. Allegedly, Plaintiff Scott pushed Chowning in defense of his brother, and the assault began. Multiple students hit and kicked Chowning, even after he was on the ground. Brown was allegedly shoved into Scott, who then began assaulting Brown. Brown was also kicked while on the ground. The assaults ended and Plaintiffs went to football practice. Brown went to the hospital and was treated for minor cuts. Chowning did not go to the hospital.

Brown attended school the next day. Brown's father came to the school and spoke with Defendant David Hurnevich, the assistant principal, about the assault. Hurnevich summoned Brown and asked for the names of the students he was with the day of the assault. Hurnevich then made a list of those students and called them in to write statements. With each new name provided in the statements, Hurnevich expanded his investigation.

Hurnevich collected 17-20 statements from students. Hurnevich called Plaintiffs' father,

Patrick Thorns, Sr. to the school. Thorns, Sr. was told of the incident and that his sons would be suspended for 10 days pending further investigation. A total of six students were given a 10 day suspension. Of those students, Alex Rowe and Josh Palise are white, and the rest - Glass, Demps, and Plaintiffs - are black. Rowe immediately transferred to another school district and was not the subject of any further discipline.

The student statements implicated several students as those involved with the actual assaults:

A. Brown - "football players;"

C. Roark - Plaintiffs, Glass and Demps;

J. Waldrop - Plaintiffs, Demps, Rowe Toth, Deon, "and more;"

unknown - Plaintiff Thorns, Jr., Demps, Glass, Rowe, "JV football team;"

K. Davis - Plaintiff Thorns, Jr., Glass, Demps;

J. Einquemani - Plaintiff Thorns, Jr., "some other people;"

R. Davis - Plaintiff Thorns, Jr., Demps, Glass, "others;"

D. Cochran - Plaintiff Thorns, Jr., Demps, Glass, "others;"

J. Toth - does not implicate anyone;

K. Carlson - Demps, but indicates Palise, Thorns, Jr., Kyle and Dillian Minnor were present;

C. Reed - Plaintiffs; Demps, Glass, Rowe, Palise, "and more;"

J. Tomassi - Plaintiffs; Demps, Glass, Rowe, Palise;

D. Glass - admits Thorns, Jr. pushed Chowning;

E. - states Plaintiffs, Demps, Rowe, Glass, Cody and 10 others who were not involved apologized the next day;

3

J. Palise - Demps, Tay, Cody, Chris, says 8 people were kicking Chowning;

A. Rowe - only implicates himself;

Dillon M. - Plaintiffs, "some other people," states Palise and Rowe were not fighting;

J. Chowning - Plaintiff Thorns, Jr., Demps, "other kids;"

P. Thorns, Jr. - implicates Plaintiffs; and

D. Demps - apologizes for his actions. [Motion, Exhibits 7 and 9].

A few days later, Thorns, Sr. received a letter in the mail stating that a hearing would be held to determine Plaintiffs' futures in the Madison Heights School District. The letter provided the date and location of the hearing. The hearing was held on October 11, 2005. The hearing was before Defendant William Harrison, the superintendent. Plaintiffs gave their side of the story and were asked about their grades and what sports they played. Hurnevich explained what the students' statements said, but did not give Plaintiffs the actual statements to review. Hurnevich recommended that Plaintiffs, Demps and Glass be suspended for 180 days. The only white student that was suspended for ten days besides Rowe, Palise, did not receive any further discipline. According to Defendants, the evidence demonstrated that Palise was present, but did not participate in the assault. During the 180 day suspension, Plaintiffs could attend Monroe Community High School which is an alternative school with strict policies and no extracurricular activities. Chowning also attended Monroe Community High School. Plaintiffs, Demps and Glass were all suspended for 180 days.

In January 2006, Thorns, Sr. requested early readmission for Plaintiffs. A hearing was held with Thorns, Sr., Hurnevich, Harrison, and the basketball coach Brian Canfield. Harrison was allegedly in favor of readmission. But, after discussing the matter out of the presence of

4

Thorns, Sr., Hurnevich told Thorns, Sr. that the community "just doesn't want this...[t]hey just don't want them here...[t]hey are going to crucify me if I let these kids back in school."

On February 16, 2006, Plaintiffs, through Thorns, Sr., filed a Complaint alleging: (1) violation of their procedural and substantive due process rights pursuant to 42 USC §1983; (2) denial of equal protection pursuant to 42 USC §1983; (3) violation of Title VI of the Civil Rights Act of 1964; and (4) violation of the Elliott-Larsen Civil Rights Act ("ELCRA"). Defendants filed a motion for summary judgment on February 5, 2007. That motion, as well as an amended motion filed February 12, 2007, were stricken. The instant Motion for summary judgment was filed on February 22, 2007.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

5

## III. ANALYSIS

### A. Due Process

As a preliminary matter, Plaintiffs concede they do not establish a claim for violation of their substantive due process rights. [Response, p.13].

Plaintiffs assert a claim for violation of their procedural due process rights arising from the 180 day suspension. The Fourteenth Amendment provides, "[n]o State shall...deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006). There are two steps in a procedural due process analysis: (1) determine whether the plaintiff was deprived of a liberty or property interest; and (2) determine whether the deprivation contravened notions of due process. *Id*.

### Were Plaintiffs Deprived of a Liberty or Property Interest?

Plaintiffs who face expulsion from school possess a property right under the Fourteenth Amendment. *Buchanan v. City of Bolivar, Tennessee*, 99 F.3d 1352, 1359 (6th Cir. 1996)(citing *Goss v. Lopez*, 419 U.S. 565 (1975)). However, in this case, the Plaintiffs' interest in the free public education to which they are entitled, is not implicated. See *Newsome*, 842 F.2d at 924. Plaintiffs had the opportunity to attend Monroe Community High School. They were not deprived of an education, but only of the ability to participate in extracurricular activities, such as football. [Response, p.5]. A right to public education is only constitutionally protected where created by state law. *Goss*, 419 U.S. at 572-574. Likewise, the right to participate in

extracurricular activities is only constitutionally protected where mandated by state law. Plaintiffs do not identify any Michigan law that sets forth an entitlement to participate in extracurricular activities such as high school football. Thus, this cannot form the basis of a due process claim. See *Hamilton v. Tennessee Secondary School Athletic Association*, 552 F.2d 681, 682 (6th Cir. 1976)(the privilege of participating in interscholastic athletics are outside the protection of due process); *Nevares v. San Marcos Consolidated Independent School District*, 111 F.3d 25, 27 (5th Cir. 1997)(no protected property interest in a school's denial to offer a student a particular curriculum); *Seamons v. Snow,* 84 F.3d 1226, 1234-1235 (10th Cir. 1996)(no constitutional right to participate in sports); *Walsh v. Louisiana High School Athletic Association*, 616 F.2d 152, 156 (5th Cir. 1980)(a due process claim based on an interference with a student's ability to participate in interscholastic athletic competition is without merit); and *Brands v. Sheldon Community School*, 671 F.Supp. 627, 631 (N.D. Iowa 1987)(citing cases)(in the context of interscholastic or intercollegiate athletics, athletes have no legitimate entitlement to participate). Plaintiffs also conceded at the hearing that the ability to participate in sports and extracurricular activities is not a protected property or liberty interest.

The issue then becomes whether Plaintiffs can maintain a procedural due process action based on the suspension where they did not lose their right to education. In *Goss*, the Court noted "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of the [due process clause] must be satisfied." *Id*. at 574-575. After *Goss*, the Court held in *Paul v. Davis*, 424 U.S. 693, 708-709 (1976), that defamation alone did not implicate the Fourteenth Amendment unless there was a corresponding deprivation of a liberty or property interest. The *Davis* Court noted that although

7

*Goss* applied the due process clause where a student's reputation was at stake, there was also the corresponding deprivation of the right to attend school. *Id*. at 710. The Sixth Circuit has discussed the holding in *Davis* and held that mere defamation does not rise to the level of a constitutional claim. *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1113 (6th Cir. 1995). "[I]njury to reputation, standing alone, is not a liberty interest protected by the Fourteenth Amendment." *Id*. "In order for defamation by governmental officials to rise to the level of a constitutional cause of action, the defamatory conduct must accompany the alteration of a recognized interest or status created by the state." *Id*.

Specifically, the Fifth Circuit has held that a student who is offered a transfer to a different program with stricter discipline does not have standing to bring a due process claim because there is no invasion of a legally protected interest. *Nevares*, 111 F.3d at 26. A student does not have a constitutionally protected right to attend a particular school. *Seamons*, 84 F.3d at 1234-1235.

Although not discussed in their brief, Plaintiffs alleged at the hearing that Plaintiffs' had a liberty interest in "safety." Plaintiffs point out that Chowning attended the alternative school made available to Plaintiffs. Plaintiffs were unable to offer any authority to support their argument.

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through some other means.

8

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989). There are exceptions to this rule, but Plaintiff does not allege, or support, any.

In light of these cases, and Plaintiffs' failure to identify a deprivation to support their procedural due process claim, Defendants are entitled to summary judgment on this claim.

**B.     Equal Protection**

Plaintiffs assert Defendants violated the Equal Protection Clause because Plaintiffs were not treated the same as similarly situated white students. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir. 1990). "To establish a prima facie violation of the Equal Protection Clause, the plaintiffs must show that they: (1) are members of a class; (2) who are similarly situated to members of another class; and (3) were treated differently from members of that other class." *Chavez v. Illinois State Police*, 27 F.Supp.2d 1053, 1066 (N.D. Ill. 1998)(citing *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989). "The plaintiffs must show purposeful and intentional acts of discrimination based on their membership in a class, as opposed to discrimination on an individual basis." *Id*. (citing *Sims v. Mulcahy*, 902 F.2d 524, 538 (7th Cir. 1990).

In this case, Plaintiffs, and two other black students, were suspended for 180 days

following an assault. Plaintiffs allege that at least three other students, all of whom are white, were also involved in the assault, but did not receive a 180 day suspension. At the hearing, Plaintiff also contended that Chowning was similarly situated. There is no evidence that Chowning was anything other than a victim of the assault. Therefore, he clearly was not similarly situated to Plaintiffs for purposes of the suspension at issue. There is no dispute that Plaintiffs are members of a protected class, and that they were treated differently than the white students they identified. The question is whether the white students identified by Plaintiffs were similarly situated to Plaintiffs with respect to the long term suspension determination, and if so, whether Plaintiffs were treated differently on the basis of their race.

1. **Alex Rowe**

Plaintiffs claim that Alex Rowe was a participant in the assault, but did not receive any discipline beyond a 10 day suspension. Defendants do not dispute that Rowe was involved, but they claim they did not hold a long term suspension hearing because he immediately transferred to another school district following the ten day suspension. Plaintiffs argue that Defendants still could have punished Rowe with a long term suspension. They point out that a school district can choose not to accept a student who has a long term suspension on his record.

Alex Rowe transferred to the Warren School District prior to the hearings for the long term suspension. Thus, Rowe was not similarly situated for purposes of the Equal Protection Clause at the time of the challenged action. Rowe was no longer a student in the Madison Heights School District like Plaintiffs were, and Rowe was not seeking to return. As Plaintiffs note, "the other students stayed in the district;" Rowe did not. [Response, p.14].

2. **Cody Roark**

Plaintiffs argue that Cody Roark was similarly situated because he was involved in the assault, yet he did not receive any punishment. Defendants argue that the difference in treatment is not due to racial bias, but to the evidence presented.

Roark was mentioned in only one of the student statements.[2] Josh Palise wrote that Roark kicked Brown and hit him with a skateboard. [Motion, Exhibit 7]. None of the other witness statements implicate Roark. Plaintiff Scott testified that Roark hit Chowning and kicked Brown in the face. [Motion, Exhibit 3, pp.19 and 21]. Plaintiff Thorns, Jr. testified that a skateboard was not involved. [Motion, Exhibit 2, p.57]. However, he did testify that Roark kicked Brown. *Id*. at p.26. Plaintiffs do not identify any other evidence inculpating Roark. In his own witness statement, Roark denied any involvement in the assault but admitted he was present and watched. [Motion, Exhibit 7].

Roark is not similarly situated to Plaintiffs. First, only two students ever implicated Roark at the time of the incident, nearly all students implicated Plaintiffs. Second, Plaintiffs themselves admitted to participating in the assault, Roark denied it. See *Shuman v. Penn Manor School District*, 422 F.3d 141, 151 (3rd Cir. 2005)(students not similarly situated where only one student is accused of wrongdoing and that student admits to the misconduct). Lastly, Thorns, Jr. partially contradicted the only witness statement that implicated Roark. Based on the amount and reliability of the evidence against Roark, he was not similarly situated to Plaintiffs.

### 3. Josh Palise

Plaintiffs allege that Josh Palise was involved in the assault but only received a 10 day

---

[2] While Roark was mentioned in "E.'s" statement as one of the individuals that apologized, the statement says that some of the people that apologized were not involved. The statement does not indicate whether Roark was involved, and so was not considered.

suspension. Of the twenty student statements offered by Defendants, two implicate Palise, and one states that Palise was not involved in the fighting. [Motion, Exhibit 7]. During the long term suspension hearings, Demps testified that Palise was present during the assaults but did not kick anyone. [Motion, Exhibit 12, p.23]. Plaintiff Scott testified that Palise was involved. [Response, Exhibit 2, p.19]. Plaintiff Thorns, Jr., named Palise as being present, and when asked who "stomped" Chowning, stated "[b]asically everybody whose name I named." [Motion, Exhibit 2, pp.18 and 25].

Defendants claim that Palise was not given further discipline because of the evidence presented. Defendants point out that none of the witnesses to the assault testified that Palise was involved. Further, Defendants rely on Harrison's testimony that there were "other witness statements" that indicated Palise did not participate. [Motion, p.16]. However, none of the alleged "other witness statements" have been presented, so this allegation is not considered.

Josh Palise was not similarly situated to Plaintiffs. With respect to Palise, there was conflicting evidence as to whether he participated in the assaults. Plaintiffs were implicated by nearly every witness and there is no exculpatory evidence. Palise was only implicated by two witness statements. Moreover, Plaintiffs admitted their participation in the assaults. Palise denied any involvement in the assault. Even one of the students who was suspended for 180 days testified at the hearing that Palise was not involved in the assault. [Motion, Exhibit 12, p.23]. In their Response, Plaintiffs characterize themselves as "the central figures in this altercation;" the evidence hardly points to such a similar description with respect to Palise.

Because Plaintiffs fail to present evidence that they were treated differently than others similarly situated, Defendants are entitled to summary judgment on Plaintiffs' Equal Protection

claim.

## C. Title VI

Plaintiffs assert a claim pursuant to 42 U.S.C. § 2000d of Title VI of the Civil Rights Act of 1964:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Plaintiffs allege Defendants violated § 2000d by treating them differently than the white students identified above, and by failing to punish Chowning for his alleged use of racial slurs. Defendants deny that Plaintiffs were suspended based on their race; rather, Defendants contend the punishments were handed out on the basis of the evidence presented.

"To maintain a private right of action under 42 U.S.C. § 2000d, plaintiff must first prove the threshold requirement that the program from which plaintiff's son was excluded receives federal financial assistance." *Buchanan v. City of Bolivar, Tennessee*, 99 F.3d 1352, 1356 (6th Cir. 1996). Plaintiffs fail to allege that Madison District Public Schools receive federal funds. Plaintiffs' claim is deficient.

Assuming Madison District Public Schools do receive federal funding, Plaintiffs' claim still fails. As to Defendants Harrison and Hurnevich, in *Buchanan*, the court held that a § 2000d claim fails against individuals. *Buchanan*, 99 F.3d at 1356. The claim is properly against the entity receiving federal funds, in this case, Defendant Madison District Public Schools. *Id*. Accordingly, Harrison and Hurnevich are entitled to summary judgment on Plaintiffs claim for violation of 42 U.S.C. § 2000d.

The remaining issue is whether Plaintiffs establish a claim of violation of § 2000d against Madison District Public Schools. "[T]o avoid summary judgment on a claim under § 2000d, a plaintiff must create a genuine issue of material fact that the defendant intended to discriminate on the basis of race." *Id*. at 1356. Plaintiffs must establish that Defendants intentionally discriminated against them, and the decision to suspend them from school was motivated by race and that race was a determining factor in the exclusion. *Id*. "[P]roof of discriminatory intent is critical." *Id*. "It follows that where the decisionmaker is motivated by a factor other than the excluded party's race, there can be no intentional discrimination." *Id*.

In *Buchanan*, the plaintiff was a junior high school student who threw a rock at the assistant principal's vehicle. The plaintiff, who was black, was given the choice of a ten day suspension, or attending an alternative school for ten days. The plaintiff attended the alternative school, but brought a claim, among others, for violation of § 2000d. The court held that the plaintiff failed to establish a genuine issue of material fact regarding intentional discrimination because the defendants submitted affidavits that race was not a factor in the disciplinary decisions. The plaintiff's only response was to allege that he would have been treated differently if he were white. The court ruled that the plaintiff "must introduce more than allegations and conclusions such as these to create a genuine issue of material fact...[the] plaintiff failed to introduce any evidence tending to prove that the defendants' reasons were a mere pretext." *Buchanan*, 99 F.3d at 1356-1357.

Defendants also direct the Court to the Tenth Circuit case *Bryant v. Independent School District No. I-38 of Garvin County, Oklahoma*, 334 F.3d 928 (10th Cir. 2003). In *Bryant*, the plaintiffs were two black students who got into two fights during the school year. After the

second fight, the plaintiffs were suspended for the remainder of the school year. They brought an action alleging discrimination because several white students were not expelled. The court applied the familiar Title VII burden shifting framework:

> First, the plaintiff has the burden of proving by a the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for [the discharge]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Id*. at 930 (citations omitted).

The court found that the plaintiffs set forth a prima facie case because they alleged that they were members of a protected class, and they were suspended for a fight while the white students who also participated were not. *Id*. The school district rebutted the presumption of discrimination by showing that the plaintiffs were the only students that were involved in two fights that semester and the school policy was that students guilty of fighting twice in the semester were to be expelled for the remainder of the semester. The school also offered evidence that over the past ten years, the policy was used to expel ten students, four of whom were black and six of whom were white.

The court held that the evidence offered by the school "adequately demonstrated that the decision to suspend [the plaintiffs] was free from any discriminatory intent or purpose." *Id*. The court further held that the plaintiffs failed to introduce any evidence that the school's reason for suspending them was pretextual.

In this case, Plaintiffs, who are black, allege that they, along with two other black

students, were given 180 day suspensions based on the assault against Chowning and Brown, while the white students involved were not. Defendants contend that the evidence presented when the discipline decision was made was the basis for the differing treatment, and not racial discrimination. As discussed above, there is a great disparity in the evidence against Palise and Roark and Plaintiffs. Plaintiffs were not only implicated, along with the other two students who were suspended, in nearly every student statement, but also admitted to their involvement. Their testimony included admitting that they kicked Chowning and Brown while they were on the ground. [Motion, Exhibits 2 and 3, pp. 25 and 19, respectively]. The evidence was scant and contradictory against Palise and Roark. The only other white student identified by Plaintiffs is Rowe. However, he transferred to another school district before the long term suspension hearings were held.

Plaintiffs do not offer any evidence to establish that Defendants proffered basis for the disciplinary decision, namely the weight and credibility of the evidence, is merely pretext. The only other evidence Plaintiffs offer is that Chowning allegedly directed racial slurs towards them, and was not disciplined. A similar claim was made in *Bryant*, and was not analyzed as part of the intentional discrimination claim resulting in the suspension. *Bryant*, 334 F.3d at 931-934. Likewise, presuming the allegations were credible, a failure to discipline Chowning for the remarks does not indicate that intentional racial discrimination was the basis for the decision to suspend Plaintiffs in light of the evidence against them. Moreover, Defendants also point out that two other black students were named in one of the witness statements. [Motion, Exhibit 7]. But, neither of those two students were disciplined, similar to Roark, based on the scarcity of evidence.

Accordingly, because Plaintiffs fail to offer evidence of intentional discrimination on the basis of race, Defendants are entitled to summary judgment on Plaintiffs' claim of violation of 42 U.S.C. § 2000d.

### D. ELCRA

Analysis of a claim for racial discrimination under the ELCRA also requires application of the Title VII burden shifting framework, *supra*. *Jackson v. Quanex Corporation*, 194 F.3d 647, 658 (6th Cir. 1999). As discussed above, Plaintiffs fail to offer evidence of pretext. Thus, Defendants are entitled to summary judgment.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for summary judgment.

**IT IS SO ORDERED.**

s/Sean F. Cox
**Sean F. Cox**
**United States District Judge**

**Dated: June 5, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on June 5, 2007, by electronic and/or ordinary mail.**

s/Jennifer Hernandez
**Case Manager**